PEOPLE ET AL., PETITIONERS, *v.* ARRILLAGA, RESPONDENT.

PETITION for a Writ of Mandamus Directed to the District
Attorney for the First District of San Juan.

No. 207.—Decided July 13, 1922.

HEADS OF DEPARTMENTS—ATTORNEY GENERAL—EXECUTIVE POWER.—Within the
executive branch of the Government the Attorney General has charge of the
administration of justice in Porto Rico, but he is under the supervision and
control of the Governor who is vested with the supreme executive power and
is ultimately responsible to the President for the enforcement of the laws
in the Island.

ID.—ID.—DISTRICT ATTORNEYS.—In proper cases the Attorney General himself
may order two district attorneys to change places and his order may be en-
forced, if necessary, by means of a writ of mandamus.

ID.—ID.—GOVERNOR.—The Governor of Porto Rico has power to review an order
of the Attorney General transferring a district attorney.

ID.—ID.—ID.—INTERNAL CONTROVERSY—JUDICIARY.—When the record shows an
internal or domestic controversy with regard to the policy to be adopted
within any of the two other branches of the Government, the judiciary will
generally interfere only to determine the law that is applicable. It will not
decide as to the course to be followed. Such a decision rests with the branch
in which the difference of opinion exists.

The facts are stated in the opinion.

*The Attorney General* and *Messrs. M. A. Muñoz* and *J.
A. Loret* for the petitioners.

*Messrs. J. B. Soto, A. Aponte* and *R. Martínez Nadal*
for the respondent.

Personal opinion of MR. CHIEF JUSTICE DEL TORO.

The Attorney General of Porto Rico filed in this court
a petition for a writ of mandamus directed to district at-
torney Arrillaga of the District Court of San Juan, First
District, commanding him to transfer to the judicial district

of Mayagüez in compliance with an order which he had received from the Attorney General and had refused to obey.

When the petition was first considered the justices of this court were not unanimous in opinion as to whether or not in a case of this kind the extraordinary writ of mandamus was the proper remedy. Finally it was agreed to issue a rule to show cause so that an opportunity might be given for a better knowledge of the facts and a more careful contemplation of the law.

The order of the Attorney General to the district attorney is as follows:

"Department of Justice of Porto Rico.—Office of the Attorney General.—San Juan, May 31, 1922.—Hon. Rafael Arrillaga Urrutia, District Attorney for the First District, San Juan.—Sir:—By virtue of the authority vested in me by law, I hereby order you to transfer immediately to the District of Mayagüez and take charge of the district attorneyship of the said district pending further orders from this Department, first delivering all matters now under your supervision to Hon. Domingo Massari, District Attorney for the Second District of San Juan.—Respectfully, Salvador Mestre, Attorney General."

The Attorney General alleges that his authority to issue the order and the duty of the district attorney to obey it ensue from the following statutes:

"That the Attorney General shall have charge of the administration of Justice in Porto Rico." Sec. 14 of the Organic Act.

" * * * The fiscals of the district courts shall be under the administrative supervision of the Attorney General in all matters pertaining to their respective offices, and shall render such reports and perform such duties as the Attorney General from time to time may require." Sec. 69 of the Political Code.

" * * * The Attorney General in special cases may require the fiscal of one district to exchange places with the fiscal of another district for such time as to the Attorney General may seem necessary." Subdivision 2 of sec. 64 of the Political Code, as amended by the Act of March 8, 1906:

The amendment consisted in the addition of the subdivision transcribed.

At the time of the change of sovereignty in Porto Rico there were, besides the municipal *fiscals,* those of the Criminal Courts of Ponce and Mayagüez and those of the Territorial Court of Porto Rico in San Juan. By the Autonomical Constitution of 1897 the office of Secretary of Grace and Justice had been created, the appointment being made by the Governor. The Governor was vested with the supreme authority of the Colony. Art 41 of the Constitution.

Under the military government General Order No. 114 of 1899 divided the Island into five judicial districts. A district court composed of three judges was organized in each district and a district attorney was appointed for each court. That General Order was supplemented by General Order No. 118 of 1899. Section 10 of the latter reads in part as follows: " * * * To each district court there shall be attached a prosecuting attorney, who will represent the law in criminal cases and in civil cases when in order." The Department of Justice of the government of the Island had been organized by General Order No. 98 of 1899 which created the office of Solicitor-general to substitute that of the Secretary of Justice, with duties similar to those usually pertaining to the office of Attorney General in the States of the Union.

In 1900 the civil government was established. The Attorney General was given all of the powers vested by law in the attorney generals of the territories, and the judicial power was continued in the courts established by the military authorities who had theretofore governed the Island.

The Legislature created by the Act of Congress of 1900 adopted the Political Code in 1902 and in 1904 passed a special "Act providing for the appointment of district *fiscals,* defining their duties, and for other purposes," section 3 of which reads as follows:

"It shall be the duty of every district fiscal to prosecute in his district all delinquents for crimes and offenses cognizable under the authority of The People of Porto Rico, and all civil actions in which The People of Porto Rico are concerned, and shall perform all other duties conferred upon him by law, and commissions of the attorney general."

In 1919 the Legislature created by the second Organic Act of Porto Rico enacted the Grand Jury Act and since that time a body of citizens takes part in the prosecution of felonies. This law provided that the district attorney should present to the grand jury in the form of indictments all charges for crimes of which they have jurisdiction. In cases which are not within the province of the grand jury, when the information has been presented to the court having jurisdiction the district attorney continues to act in accordance with the former laws in force.

By virtue of the foregoing it may be concluded that under the American sovereignty the district attorneys in Porto Rico have always had charge of the prosecution of offenders, alone until the enactment of the Grand Jury Act and in conjunction with that body in cases of felony since 1919, and that there has always existed in the Island also an organized executive Department of Justice whose head is the Attorney General with authority to supervise the district attorneys, and, since 1906, with power to order two district attorneys to change places in special cases and for such time as he may deem necessary, the law expressly imposing, since 1904, upon district attorneys the duty of complying with all commissions received from the Attorney General.

Did the Attorney General exercise in this case the power conferred on him by law to order two district attorneys to change places? Did the Attorney General give the district attorney a commission which he was bound to comply with in accordance with the Act of 1904?

Taking as a basis the language of the order and the pro-

visions of the law, both questions should be answered in the affirmative.

Judging from its own terms, the order is valid and the duty to obey it clear. That being the case, it seems to be a natural consequence that mandamus lies, although it is necessary to admit that the remedy has been seldom used to compel an officer to obey an order of his superior officer.

But that is not all. The pleadings show that in fact what the court is asked to decide is that the district attorney for the First District of San Juan must obey an order of the Attorney General temporarily transferring him from his district because the Attorney General believes that the ends of justice so require. And thus the case assumes the character of an actual internal conflict between officials of one of the executive branches of the government, and this conflict is aggravated and extended by the intervention of the Governor therein.

At the hearing the district attorney made, among others, the following allegation:

"And the respondent finally alleges in opposition to the said petition and the relief therein prayed for that on the 6th of June, 1922, the Governor of Porto Rico wrote to him the following letter which he received on the 7th day of the same month.

" 'San Juan, Porto Rico.—June 6, 1922.—Hon. Rafael Arrillaga Urrutia.—Fiscal of the First Judicial District of San Juan, San Juan, P. R.—Dear Sir:—Whereas it has been called to my attention that the Attorney General of Porto Rico has ordered your transfer as Fiscal from the 1st District of San Juan, Porto Rico, to the District of Mayagüez, and no good cause appearing therefor, and none being given by the Attorney General for such transfer, and you were not appointed or commissioned as Fiscal of the Mayagüez District, but as Fiscal of the First District of San Juan, and whereas the Political Code of Porto Rico only authorizes the Attorney General to transfer Fiscals for special causes shown, and no good reason has been given, but on the contrary it appears that said order was not made according to law. Now, therefore, under and by virtue of the authority vested in me by section 12 of the Organic Act, I hereby set aside and rescind said order, and direct that you attend

to the duties of the office appointed and commissioned by me.—Done at my office in the city of San Juan this 6th day of June, 1922.— (Sgd.)   E. Mont. Reily, Governor.' "

Is this an order given clearly without authority and which, therefore, may be ignored, the conflict being thus reduced to its original limits, or is this an executve order made with full jurisdiction?

I shall analyze the problem.   Section 12 of the Organic Act now in force prescribes that *the supreme executive power of the Island* shall be vested in an executive officer, whose official title shall be "The Governor of Porto Rico."   He is appointed by the President by and with the advice and consent of the Senate and holds his office at the pleasure of the President.   He is responsible for the faithful execution of the laws and has, to quote the law, *the general supervision and control of all the departments and bureaus of the Government in Porto Rico, so far as is not inconsistent with the provisions of this Act.*

Section 13 creates the executive departments of the government, among them the Department of Justice, the head of which shall be designated as the Attorney General, who shall be appointed by the President by and with the advice and consent of the Senate.   The heads of departments shall collectively form a council to the Governor, known as the Executive Council, and the said heads *"shall perform under the general supervision of the Governor the duties hereinafter prescribed,* or which may hereafter be prescribed by law, and such other duties, not inconsistent with law, as the Governor, with the approval of the President, may assign to them."

And *after that,* in section 14, there is the provision first invoked by the Attorney General in this case, to wit: That he *shall have charge of the administration of justice in Porto Rico.*

There is no doubt that within the executive branch of the

government the Attorney General is the one who has charge of the administration of justice in Porto Rico, but he has it under the general supervision and control of the Governor in whom is vested the supreme executive power and who is ultimately responsible to the President for the execution of the laws in the Island, and, that being the case, it is necessary to conclude that the order of the Governor is not a mere nullity and that the Governor acted with full jurisdiction in the matter. It is well to remember that when the law speaks of the administration of justice it refers to the *administrative* part. The judicial power, as a separate branch of the government, is not vested in the Governor nor in the Attorney General, but in the courts of justice. Sections 40 *et seq.* of the Organic Act of 1917.

I fully concur in the theory that the Governor's power of supervision does not include the power to direct the conduct of the Attorney General in the discharge of those duties that are strictly personal and for which he is personally responsible, but that is not the case here.

The spirit of the law is that the heads of departments and the Governor act harmoniously, the latter being their supreme head in the Island. Harmony does not mean submission. The head of a department is not bound to adopt an unlawful or immoral rule of conduct. He has independence of action and may and should act in accordance with his best knowledge and ability, but that same knowledge and ability indicate to him that he is a part of a whole, doing work that is subdivided, but common with a responsible and directing head, the Governor. If a conflict arises it is the duty of each head of department to sustain what in his opinion is just. If he does not prevail and is still convinced of the justice of his position and the question is a fundamental one or one where the honor and dignity of the government so require, then there is within the same executive power recourse to a higher head, the President. If even in that

highest station he does not obtain justice, he should sever the ties that bind him to such an administration and appeal to the highest tribunal known to democracies, the People.

Having arrived at the conclusion that the Governor acted with jurisdiction in this matter, can the court consider the justice or injustice of his attitude? The judicial power has its limit.

"Frequently the term 'judicial power,' as employed in a constitution, is not defined therein but is used to designate one of the three great branches or departments into which the powers of government are divided and by which its affairs are to be administered. The primary functions of the judiciary are to declare what the law is and to determine the rights of parties conformably thereto rather than on ethical principles for which there is no support in constitution, statute, or judicial decision. This is an exercise of judicial, as distinguished from legislative, and from executive power, including administrative discretion. It is, therefore, the duty of the judiciary to construe the constitution and laws, to determine what laws are in force in a particular territory at a particular time, the nature and scope of the several departments of government, and whether any department has exceeded its constitutional functions." 12 C. J. 871–872.

To attempt to penetrate the motives of each of these officials, the district attorney and the Governor; to attempt to settle the internal conflict, not of law, for this has been settled, but of conduct and of policy, would, in my opinion, be an invasion of the peculiar, private, domestic sphere of the executive power.

At the hearing of this case the statement was made that conditions in the Island were such that the Supreme Court would have to take charge of the Government. Let there be no fear that this extreme will be reached. If the Supreme Court, inspired by the noblest desire to impart justice, should pass the limits of its powers, notwithstanding the nobility of its desire and the rectitude of its intention, it would commit an

arbitrary and despotic act and instead of being a safeguard it would become a menace to public liberty.

The judicial power which is constantly vigilant in fixing the limitations of the other coordinate powers which together form a government of the people, by the people and for the people, should be very careful to impose limitations upon itself.

I can not conceal that the facts under which this case originated, the motives that might have actuated a governor menaced by a grand jury indictment to prevent a certain district attorney from being eliminated from the conduct of the case, the manner in which the order of the Governor was drawn, the person to whom it was addressed, the date on which it was issued, the helpless position in which for the time being an official was placed who alleges his desire to perform his duty and asks for the protection of the court, if his intention is honest, have constantly agitated my conscience during the consideration of this case and have kept me hesitating about the ultimate attitude that I should assume. But after careful meditation I am convinced that the only proper solution is the one stated above, to wit: That the writ of mandamus asked for shall not be granted.

The conflict involved and the abnormal situation which the records show, ought to be decided by the duly constituted executive power of the Government. The chief of this power is the President of the Republic. To do justice is not an exclusive attribute of the courts, and it is to be expected with entire confidence that the President will do justice in this case.

*Writ denied.*

Justices Wolf, Hutchison and Franco Soto concurred in the judgment.

Mr. Justice Aldrey dissented.